### D. I. Bauer, Appellee, v. The Illinois Central Railroad Company, Appellant.

### Gen. No. 5,663.

1. Bill of Lading—*not necessary to recovery.* The loss of a bill of lading is not a bar to recovery for value of goods where it is shown to have been issued by the agent of the carrier.

2. Agency—*carriers.* Where a clerk, apparently in charge of a freight office, receives an order for reshipment and enters it upon the books, his authority is sufficiently shown to bind the company.

3. Carriers—*responsible for shipment to destination.* A common carrier, receiving goods for shipment to a certain point and issuing a bill of lading, under the law of this state becomes responsible for shipment to such point regardless of whether it can do so directly or by contract with other lines.

4. Carriers—*right of stoppage in transitu.* The right of a consignor to stoppage *in transitu* remains so long as the goods are in possession of the carrier.

5. Carriers—*prepayment of freight charges.* Under R. S. § 22, of the act in relation to fencing and operating railroads, a shipper is not bound to prepay the charges unless they are demanded.

6. Bill of Lading—*sufficiently accounted for.* Where the last trace of a bill of lading shows it was in the hands of the chief clerk at the freight house, it is sufficiently accounted for to defeat the contention of carrier, in an action by consignor, that it may be liable to consignee.

Appeal from the Circuit Court of Kankakee county; the Hon. Charles B. Campbell, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

HUNTER & SCHNEIDER, for appellant; JOHN G. DREN-
NAN, of counsel.

COOPER & HOBBIE, for appellee.

MR. JUSTICE WHITNEY delivered the opinion of the
court.

This suit was brought by appellee against appellant
before a justice of the peace, and tried in the Circuit
Court on appeal, where appellee obtained a judgment
for $113.80 full amount of claim.

Appellee received a shipment of goods from Slater
& Morrill, Inc., whose salesrooms are at Boston, and
who wrote letters from South Braintree, Massachu-
setts. Appellee received the goods at his store in Kan-
kakee, and was dissatisfied with them, and boxed them
up, and took them to appellant's freight house in Kan-
kakee, and shipped them to Boston. Afterward, ap-
pellee received a letter from Slater & Morrill to the
effect that they would not take back the goods, and
advised appellee to recall the goods.

It would appear that after after this suit was prob-
ably begun, at any rate long after the goods were
shipped back to Slater & Morrill, Slater & Morrill sued
appellee for the price of the goods and he paid the
bill. When appellee's clerk ordered the goods re-
turned, the chief clerk of appellant at Kankakee en-
tered a notation upon the books of appellant that the
goods were ordered returned. Appellant did not re-
turn the goods, and thereafter appellee brought this
suit to recover the value. The judgment is for what
the goods cost appellee. The defendant in the court
below appeals.

Appellant contends that the bill of lading is not
properly accounted for, and that appellant may be
liable to Slater & Morrill, but not to appellee. Ap-
pellee testified he did not send the bill of lading to
Slater & Morrill, but a copy of it. Afterwards, on
cross-examination, he was less certain about that, and

348          APPELLATE COURTS OF ILLINOIS.

Bauer v. The Ill. Cent. R. R. Co., 175 Ill. App. 346.

finally said he supposed he must have sent it, but did not remember doing so. That is not all the evidence on the subject however. Appellee testified when he sent the box back to appellant, he gave the bill of lading to one of his clerks, and sent him to the railroad company with directions to order the goods returned. The clerk is not a witness, but Newberger, a clerk for appellee, testified that appellee told him to go to the Illinois Central Railroad Company, and get a duplicate of the entry on their books, which he did. Brown, who was then the chief clerk in the freight house of appellant, and a witness for appellee on the trial in the court below, testified that either appellee, or someone from his place of business, came to him and requested that this shipment be returned to Kankakee, and that he wrote the notation on the books, said notation below the headings of different columns, giving the name of the shipper, consignee, etc., was as follows, "Ordered returned to K. K. K. D. W. G. B - 4-19."

"D. W. G." were the initials of appellant's agent at Kankakee. "B." was the initial of Brown, and "4-19" the date when this entry was made. Brown further testified that he had in his hands the original bill of lading at that time, and that he did not know what became of it, but that he did not deliver it to appellee. It was also proven that the goods when originally returned by appellee were delivered to appellant's freight house, marked, "Slater & Morrill, Boston, Mass." and that the goods were there accepted by the agent of appellant, and bill of lading issued and delivered to the drayman, and by the drayman returned to appellee.

There is testimony by Brown that when this order for the return of the goods was entered by him on the books of appellant, he had in his hands the original bill of lading, but it is not fully contained in the abstract of the testimony, but is found in the transcript on page 51. This puts the original bill of lading in

the possession of the chief clerk of appellant, at its freight house at Kankakee, with orders to have the goods returned and the original consignees of the goods, Slater & Morrill, had, on April 2nd, written to appellee that they felt appellee should recall these goods and use them according to the terms of his contract, in which letter they also stated that they did not see how they could accept the goods. The last that is shown of the bill of lading is that it was in the hands of the chief clerk at the freight house in Kankakee; and it does not appear by the evidence that this bill of lading was ever in the hands of Slater & Morrill; and under the circumstances, with that bill of lading so fully accounted for, its existence should be no bar to a recovery by appellee for the value of these goods. Appellant contends it is not shown that Brown, the chief clerk of appellant, had any authority to agree that the goods should be returned. Brown testified he was chief clerk, and if the agent and assistant agent were both out of the freight house, he had full authority. We are of the opinion that that, and the fact he did receive the order and the goods, and made the entry upon the books, and that he was then in the freight office, is sufficient to show his authority to bind the company. We do not believe it is incumbent upon business men coming to a freight office, to take action in reference to the shipment of goods, to inquire what rank the man in apparent charge holds and to inquire specially where the agent, or assistant agent is, and make sure they are not somewhere on the premises, before he can safely give his orders to the man in apparent charge. We think the appellant was bound by the action of its clerk, Brown, the name of whose office implies he can perform such duties. There can be no doubt, by accepting the order for the reshipment of the goods, making the entry on the book, then having the goods in its possession, the company agreed to have the goods sent back. There is no evidence that appellant ever notified appellee that it would

350 APPELLATE COURTS OF ILLINOIS.

Bauer v. The Ill. Cent. R. R. Co., 175 Ill. App. 346.

not perform that order. Appellant also urges that its line does not run to Boston, and that the goods must have passed into the hands of some connecting carrier. There is no such proof in the record. The proof is that appellant received the goods for shipment to Boston, and issued the bill of lading and under the law of this state it became responsible for the shipment, whether it had by contract, or otherwise, power to deliver the goods in Boston, either over its own line or other lines with which it had a contract. If it had any lack of ability to ship these goods to Boston, because Boston was not on its own line, it should have notified appellee, when he ordered the goods shipped back there, and that it could not take the order. When the goods were delivered to it, and it received them, it became a common carrier, and that relation continues until the contrary is shown; and there is no showing in this record but that the goods were still in appellant's possession as a common carrier, when the order to return the goods was received, and the right of stoppage *in transitu* existed while they still were in the hands of appellant as a common carrier. Peoria & P. U. R. Co. v. U. S. Rolling-Stock Co., 136 Ill. 643; Lewis v. Galena & C. U. R. Co., 40 Ill. 281; Howell v. Morlan, 78 Ill. 162; Adams Exp. Co. v. Stettaners, 61 Ill. 184. Appellant argues that the goods must have reached Boston, and must have gone into the warehouse, but that was for the appellant to prove, and it did not prove that.

Appellant contended that appellee should pay the charges for the return of the goods. Under our statute a shipper is not bound to prepay the charges unless prepayment is demanded, and there is no proof any prepayment was demanded. (Section 22 of the act in relation to fencing and operating railroads.)

Appellant argues as if the proof showed the goods had reached South Braintree. There is no such proof. The only reference to South Braintree is in the letters of Slater & Morrill, one offered by appellee, and

one by appellant, but neither of these letters say that the goods were in South Braintree; and if they were, that is not Boston, to which they were shipped.

We are of opinion that a sufficient case was made to call upon the appellant to show something which would relieve it from liability. It received these goods for shipment to Boston; the shipment was countermanded, and the original bill of lading was put into appellant's hands; it accepted the order for reshipment, and accepted the original bill of lading, and made no objection of any kind, and no request for prepayment of freight, and it did not return the goods. It shows no excuse for not returning the goods. So far as the proof shows, it has the goods at the present time, therefore appellant must be held liable.

We see no reversible error in the record. Judgment affirmed.

*Affirmed.*